Jonathan D. Miller (Bar No. 220848)
jonathan@nshmlaw.com
Alison M. Bernal (Bar No. 264629)
alison@nshmlaw.com
NYE, STIRLING, HALE & MILLER, LLP
33 West Mission Street, Suite 201
Santa Barbara, California 93101
Telephone: (805) 963-2345
Facsimile: (805) 563-5385

*Additional counsel listed below.*

Attorneys for Plaintiffs, LUKE DAVIS, JULIAN
VARGAS, and the Proposed Class

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUKE DAVIS and JULIAN VARGAS, individually and on behalf of all others similarly situated, | CASE NO.: |
| | **CLASS ACTION COMPLAINT** |
| Plaintiffs, | 1. Violation of Title III of the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 *et seq.*) |
| v. | |
| LABORATORY CORPORATION OF AMERICA HOLDINGS; and DOES 1-10, inclusive, | 2. Violation of California's Unruh Civil Rights Act (Cal. Civil Code § 51 *et seq.*) |
| Defendants. | 3. Violation of California's Disabled Persons Act (Cal. Civil Code § 54, *et seq.*) |
| | TRIAL DATE: None set |

Plaintiffs Luke Davis and Julian Vargas (hereinafter "Plaintiffs"), individually and on behalf of all others similarly situated, by their attorneys, allege the following upon information and belief, except for those allegations pertaining to Plaintiffs, which are based on their personal knowledge:

## NATURE OF THE ACTION

1. Plaintiffs Luke Davis and Julian Vargas are visually impaired individuals who rely upon auxiliary aids and services such as screen reading software, accessible electronic and information technologies, and other effective methods of making visually delivered materials available to persons who are blind

1

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1  or have low vision. Defendant Laboratory Corporation of America Holdings, and

2  Does 1 through 10, (collectively "Defendant") discriminated against Plaintiffs by

3  refusing and failing to provide auxiliary aids and services to Plaintiffs, and by

4  requiring Plaintiffs to rely upon other means of communication that are inadequate

5  to provide equal opportunity to participate in and benefit from Defendant's health

6  care services free from discrimination. Plaintiffs bring this action individually and

7  on behalf of all others similarly situated to compel Defendant to cease unlawful

8  discriminatory practices and implement policies and procedures that will ensure

9  Plaintiffs effective communication, full and equal enjoyment, and a meaningful

10  opportunity to participate in and benefit from Defendant's services. Plaintiffs seek

11  declaratory, injunctive, and equitable relief and attorneys' fees and costs to redress

12  Defendant's unlawful discrimination on the basis of disability in violation of Title

13  III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"),

14  and its implementing regulations. Additionally, Plaintiff Vargas brings this action

15  individually and on behalf of all other similarly situated California residents and

16  seeks declaratory, injunctive, and equitable relief and attorneys' fees and costs to

17  redress Defendant's unlawful discrimination on the basis of disability in violation of

18  California's Unruh Civil Rights Act, California Civil Code § 51 *et seq.* ("Unruh

19  Act"), and for statutory damages, in accordance with California Civil Code § 52(a).

20      2.   Plaintiffs have visited Defendant's facilities and were denied full and

21  equal access as a result of Defendant's inaccessible touchscreen kiosks for self-

22  service check-in Defendant requires all patients use to sign in and/or register for

23  their appointments.

24      3.   Defendant's touchscreen kiosks for self-service check-in do not contain

25  the necessary technology that would enable a person with a visual impairment to a)

26  enter any personal information necessary to process a transaction in a manner that

27  ensures the same degree of personal privacy afforded to those without visual

28  impairments; or b) use the device independently and without the assistance of others

in the same manner afforded to those without visual impairments. Plaintiffs were informed by staff of Defendant that the kiosks are not accessible to the blind.

4.     By failing to make its touchscreen kiosks accessible to visually impaired persons, Defendant, a public accommodation subject to Title III of the ADA and the Unruh Act, deprives blind and visually-impaired individuals of the full benefits of Defendant's health care services—all benefits it affords nondisabled individuals—thereby increasing the sense of isolation and stigma among these Americans that Title III of the ADA and the Unruh Act were meant to redress.

5.     Defendant has demonstrated through its interactions with Plaintiffs that it has adopted a policy and/or pattern and practice of refusing to provide accessible touchscreen kiosks for its visually impaired patients, and that this decision, on information and belief, is based purely on financial considerations. Defendant launched the touchscreen kiosks as part of Defendant's Launchpad initiative. The initiative "is focused on eliminating manual processes, digitizing the business, using technology to improve quality, operations and service, and enhancing the consumer experience, which are designed to unlock new avenues for growth and contribute to improvement in long-term margins. This initiative is expected to generate pre-tax net savings of approximately $200 million over the three-year period ending in 2021, with pre-tax, one-time charges expected to be approximately $40 million."[1]

6.     Defendant has further demonstrated through its interactions with Plaintiffs that Defendant's employees are not properly trained regarding the civil rights, communication needs, or how to interact with visually impaired individuals.

7.     Defendant's discrimination sends a message that it is acceptable for medical providers to adopt policies, procedures and practices that deprive blind and visually impaired individuals of the opportunity to be full partners in their receipt of

---

[1] See, https://ir.labcorp.com/news-releases/news-release-details/labcorp-announces-2018-fourth-quarter-and-full-year-results-and (last accessed January 22, 2020).

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

CLASS ACTION COMPLAINT

health care services.

8. The ADA and the Unruh Act expressly contemplate injunctive relief aimed at modification of a policy or practice that Plaintiffs seek in this action. In relevant part, the ADA states:

> Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods…

42 U.S.C. § 12188(a)(2); Cal. Civ. Code, § 52(c)(1).

9. Consistent with 42 U.S.C. § 12188(a)(2) and the Unruh Act, Plaintiffs seek a permanent injunction requiring that:

a. Defendant take all steps necessary to bring its touchscreen kiosks into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that its touchscreen kiosks are fully accessible to, and independently usable by, individuals with visual disabilities, through the implementation of necessary technology that would enable persons with a visual impairment to enter any personal information necessary to process a transaction in a manner that ensures the same degree of personal privacy afforded to those without visual impairments and use the device independently and without the assistance of others in the same manner afforded to those without visual impairments;

b. Defendant modify its existing policies, practices and procedures so that the touchscreen kiosk accessibility barriers at Defendant's facilities do not reoccur; and

c. Plaintiffs' representatives shall monitor Defendant's facilities to ensure that the injunctive relief ordered pursuant to Paragraph 9.a. and 9.b. has been implemented and will remain in place.

10. Plaintiffs' claims for permanent injunctive relief are asserted as a

4

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

nationwide class claim pursuant to Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) was specifically intended to be utilized in civil rights cases where the Plaintiffs seek injunctive relief for his or her own benefit and the benefit of a class of similarly situated individuals. To that end, the note to the 1996 amendment to Rule 23 states:

> Subdivision(b)(2). This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate . . .. Illustrative are various actions in the civil rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration.

11.    In addition, Plaintiff Vargas' claims for statutory damages pursuant to California Civil Code section 52(a) are asserted as a California statewide class claim pursuant to Fed. R. Civ. P. 23(b)(3).

## PARTIES

12.    Plaintiff Luke Davis is a resident of Philadelphia, Pennsylvania. Mr. Davis is an independent, visually impaired person. Mr. Davis has a medical condition, the diagnosis and monitoring of which requires periodic blood tests. He has visited Lab Corp for some of these tests, and for other routine medical blood tests, on multiple occasions in the last few years.

13.    Plaintiff Julian Vargas is a resident of Los Angeles, California. As described above, Mr. Vargas is a visually impaired person. Mr. Vargas was born with a genetic eye disorder referred to as Leber Congenital Amaurosis ("LCA"), and as a result is blind. Like Mr. Davis, Mr. Vargas is very independent and owns his own business teaching individuals with disabilities how to use mobile assistive technology.

14.    Plaintiffs are therefore members of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28

5

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

C.F.R. §§ 36.101 *et seq.*, and the Unruh Act, Cal. Civ. Code, § 51 *et seq.*

15.     Defendant Laboratory Corporation of America Holdings is, and at all times relevant hereto was, a Delaware Corporation, with its headquarters in Burlington, North Carolina. Defendant owns and operates laboratories, patient service centers, offices and other facilities throughout the United States. Defendant is "a leading global life sciences company that is deeply integrated in guiding patient care through its comprehensive clinical laboratory and end-to-end drug development services." See, "About Us" at www.labcorp.com/about-us (last accessed January 22, 2020).

16.     The LabCorp location which Plaintiff Julian Vargas visited is located at is 15211 Vanowen Street, Unit 319, Van Nuys, California 91405.

17.     The LabCorp location which Plaintiff Luke Davis visited is located at 9331 Old Bustleton Avenue, Philadelphia, Pennsylvania 19115.

18.     Defendant's facilities are places of public accommodation as defined in 42 U.S.C. §12181(7)(G) and Defendant is, on information and belief, a recipient of federal financial assistance. Thus, it is subject to the requirements of the ADA, the Rehabilitation Act, the Affordable Care Act, and the Unruh Act.

19.     The true names and capacities, whether individual, corporate, associate, or otherwise of the Defendants named herein as Does 1 through 10, are unknown to Plaintiffs at this time. Plaintiffs will amend this Complaint to allege their true names and capacities when known. Plaintiffs are informed and believe and thereon allege that each of the fictitiously-named Defendants is responsible in some manner for the occurrences alleged in this Complaint.

20.     Plaintiffs allege that Defendant, including Doe Defendants, and each of them at all times mentioned in this Complaint were the alter egos, agents and/or employees and/or employers of their Co-Defendants and in doing the things alleged in this Complaint were acting within the course of such agency and/or employment and with the permission and consent of their Co-Defendants.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

## **FACTUAL BACKGROUND**

**Plaintiffs Have Been Denied Full and Equal Access to Defendants' Facilities**

21.     Plaintiff Davis has visited LabCorp patient service centers on multiple occasions. Mr. Davis has faced the following access barriers when trying to make appointments and/or check-in at LabCorp:

a.     October 11, 2016: Mr. Davis attempted to make an appointment via the LabCorp website using the Safari web browser on iOS. Many parts of the LabCorp website were completely inaccessible and required sighted assistance.

b.     December 23, 2017: Mr. Davis had the same experience trying to make an appointment that he had in October 2016. When he arrived at the appointment, the kiosk was completely inaccessible. Fortunately, Mr. Davis was accompanied by a family member who used the kiosk at the location to sign him in. The kiosk check-in process required several pieces of private personal information. Because the kiosk was inaccessible, Mr. Davis had to speak this private medical information out loud to his family member in a small public waiting room, within earshot of other customers.

c.     March 28, 2018: Mr. Davis had a walk-in visit where he again faced the same issue with the inaccessible kiosk. Again, he fortunately had a family member with him to check him in using the kiosk.

d.     October 5, 2018: Mr. Davis requested a family member make an appointment for him using Safari on iOS, because of Mr. Davis' difficulty accessing the website. When he arrived for his appointment, the LabCorp staff at the location stated they could not help him check in – Mr. Davis had to use the kiosk. Mr. Davis did not have a family member with him. Another patient's aid worker – who Mr. Davis did not know – but who simply happened to be in the waiting room,

7

1    checked Mr. Davis in using the kiosk. As a result, Mr. Davis had to

2    orally state private information, including his home address and/or

3    phone number, out loud in a public waiting room to a stranger who had

4    kindly offered to help him check in.

5    e.    Approximately October 4, 2019: Mr. Davis used the LabCorp iOS app

6    to make an appointment. He found the process of choosing a location to

7    be only partially functional (the option to use location services to

8    choose a location close to him either would not work accessibly, or

9    would not work at all), and the entire process was cumbersome and

10   inaccessible. For instance, Mr. Davis found that navigation through the

11   screens was made more difficult by inconsistencies between drag

12   navigation and swipe navigation, with different elements, and element

13   positions, being reported by each method, and neither giving a full

14   understanding of some screens. Mr. Davis further found that the

15   "Toggle navigation" menu button at the app's top left, which was

16   intended to expose various functions, could not be reliably activated

17   with Voiceover. Mr. Davis further found various screen elements that

18   were labeled strangely, or that had no effect, or not the effect expected.

19   Examples include the "background" link, the "layer 1" link, and other

20   elements. There are selectable tabs on the screen, with no apparent way

21   to know which is selected. After Mr. Davis made an appointment, he

22   had to answer questions such as "Will you be fasting?", which include

23   "yes" and "no" buttons. These buttons had no accessible indication of

24   which button is selected by default or selected when the user activates

25   one. Under "Financial details", there is no accessible indication of

26   which coverage option is selected. The options are listed as headings,

27   which are not generally selectable options in an HTML or app context.

28   After trying for several hours to make an appointment using the app,

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

8

Mr. Davis gave up. The following day he tried again and was successfully able to make an appointment with sighted help. Because of the known inaccessibility of the kiosk, Mr. Davis used the mobile check-in option.

f.     October 29, 2019: Mr. Davis attempted to use the website in Windows to make an appointment. He was only able to get through part of the process before an accessibility problem prevented completion. He attempted to file a website feedback form explaining the problem, which the website invited him to do. However, there were required options on the feedback form which were inaccessible to his screen reader, which therefore prevented him from submitting the feedback form. Mr. Davis ended up using the iOS app again. It was a frustrating experience, as before. Because of the known inaccessibility of the kiosk, Mr. Davis used the mobile check-in option.

g.     November 22, 2019: Mr. Davis made an appointment using the iOS app, which was smoother now that he had learned how to work around some of the difficult accessibility areas and knew to just keep trying until it worked. He signed in by mobile check-in due to the inaccessibility of the kiosk.

22.     Plaintiff Vargas visited a LabCorp facility on Friday, January 10, 2020. When he arrived, he attempted to sign in using the kiosk so that he would not lose his spot in line. He was unable to check-in at the kiosk. He then asked for, and waited for, a staff member to check in. The staff member finally arrived and expressly told him that the kiosk was not accessible to blind individuals. Mr. Vargas visited the LabCorp patient service center located at 15211 Vanowen Street, Unit 319, Van Nuys, CA 91405.

23.     As a result of Defendant's failure to ensure effective communications with Plaintiffs, and denial of auxiliary aid and services, they received services that

9

1   were objectively substandard, inaccessible, and inferior to those provided to sighted

2   patients, and were subjected to discriminatory treatment because of their disability.

3       24.     Despite this difficulty, frustration, and unequal treatment, Plaintiffs will

4   seek Defendant's health care services in the future, whether by choice or necessity,

5   due to the proximity of Defendant's facilities to their homes, and their insurance

6   coverage, and anticipate being required to do so in order to have additional testing

7   completed, but are deterred from doing so due to the discrimination they have faced

8   and expect to face in the future. Furthermore, Plaintiffs intend to return to

9   Defendant's facilities to ascertain whether those facilities remain in violation of

10   accessibility standards.

11       **Defendant Repeatedly Denies Individuals With Disabilities Full and**

12       **Equal Access to Defendants' Facilities.**

13       25.     As the owner and manager of its patient service centers, website, and

14   mobile applications, Defendant employs centralized policies, practices, and

15   procedures with regard to its company-wide policy of electronic check-in at its

16   patient service centers.

17       26.     Though Defendant may have centralized policies regarding the

18   maintenance and operation of its touchscreen kiosks, websites, and mobile

19   applications, Defendant has never had a plan or policy that is reasonably calculated

20   to make its touchscreen kiosks and check-in options fully accessible to, and

21   independently usable by, individuals with vision related disabilities.

22       27.     As a result of Defendant's non-compliance with the ADA and Unruh

23   Act, Plaintiffs have been denied the benefit of full and equal enjoyment of

24   Defendant's goods, services, facilities, privileges, advantages, or accommodations,

25   have been denied participation in and have been treated unequally by the Defendant,

26   and Defendant has failed to provide effective and accessible auxiliary aids or

27   services that protect Plaintiffs' privacy and independence.

28       28.     If Defendant's touchscreen kiosks and web-based check-in options

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA  93101

10

were accessible, i.e. if Defendant removed and remediated the access barriers described above, Plaintiffs could independently and privately utilize Defendant's products and services.

29.     Unfortunately, Defendant denies approximately 8.1 million[2] Americans who have difficulty seeing access to its goods, products, and services because the touchscreen kiosks and web-based check-in options are not readily accessible and usable by persons with visual impairments.

## JURISDICTION AND VENUE

30.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

31.     Plaintiff's claims asserted herein arose in this judicial district, and Defendant does substantial business in this judicial district. Specifically, Defendant is registered to do business in California and has hundreds of locations throughout the state, including in this judicial district.

32.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2). Defendant is subject to personal jurisdiction in this District because Defendant does substantial business in this District, and a substantial part of the events or omissions giving rise to these claims occurred in this District. Defendant engaged in the extensive promotion, marketing, distribution, and sales of the services at issue in this District.

## CLASS ALLEGATIONS

33.     Plaintiffs bring this matter on behalf of themselves and those similarly situated.

---

[2]     Press Release, United States Census Bureau, Nearly 1 in 5 People Have a Disability in the U.S., Census Bureau Reports *Report Released to Coincide with 22nd Anniversary of the ADA* (Jul. 25, 2012), *available at* https://www.census.gov/newsroom/releases/archives/miscellaneous/cb12-134.html (last accessed April 25, 2019) ("About 8.1 million people had difficulty seeing, including 2.0 million who were blind or unable to see.").

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

34.     The Class is defined as all persons with visual disabilities, who were denied full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any of Defendant's patient service centers in the United States on the basis of disability due to Defendant's failure to comply with the ADA's auxiliary aids and services requirements during the Class Period (the "Nationwide Injunctive Class"). Plaintiffs reserve the right to amend or modify the Class definition in connection with a motion for Class certification and/or the result of discovery.

35.     Plaintiff Vargas also seeks certification of the following California sub-class: "all legally blind individuals who visited a LabCorp patient service center in California and were denied full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations due to LabCorp's use of touchscreen check-in kiosks." Plaintiff Vargas reserves the right to amend or modify the sub-Class definition in connection with a motion for Class certification and/or the result of discovery.

36.     The California sub-class seeks class wide damages pursuant to California Civil Code § 52(a) in the amount of $4,000 per violation and, pursuant to California Civil Code § 54.3 in the amount of $1,000 per violation, based on Defendant's wrongful policy and practice of failing to provide full and equal access to visually impaired Californians as alleged herein. This action does not seek class recovery for actual damages, personal injuries or emotional distress that may have been caused by Defendant's conduct alleged herein.

37.     This action should be certified as a class action under Federal Rule of Civil Procedure 23(a) and (b)(2) for the Nationwide Injunctive Class. It satisfies the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

A.     <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable. Plaintiffs believe that there are tens of

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

thousands of visually impaired individuals who are Class Members who have been harmed and suffered discrimination due to Defendant's failure to comply with the ADA's auxiliary aids and services requirements.

B.   <u>Commonality</u>: There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are denied their civil rights to full and equal access to, and use and enjoyment of Defendant's facilities and/or services due to Defendant's failure to make its facilities fully accessible and independently usable as described above.

C.   <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the members of the proposed Nationwide Injunctive Class. The claims of Plaintiffs and members of the class are based on the same legal theories and arise from the same unlawful conduct.

D.   <u>Adequacy</u>: The Plaintiffs are all adequate Class representatives. None of their interests conflict with the interests of the Class Members they seek to represent; Plaintiffs will fairly, adequately, and vigorously represent and protect the interests of the members of the class, all of whom are similarly situated individuals with visual impairments, and they have a strong interest in vindicating their own and others civil rights; and, they have retained counsel competent and experienced in complex class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA and Unruh Act.

38.   Class certification of the Nationwide Injunctive Class is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted on or refused to act on grounds generally applicable to the Class, making appropriate declaratory, injunctive, and equitable relief with respect to Plaintiffs and the Class as a whole.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

13

39.     This action should be further certified as a class action under Federal Rule of Civil Procedure 23(a) and (b)(3) for the California Unruh Damages Sub-Class. Plaintiff Vargas asserts the subclass, limited to class members who are, or during the relevant time were, residents of California, satisfies the class action prerequisites of numerosity, commonality, typicality, and adequacy for the same reasons set forth in preceding paragraph. In addition:

A.      Predominance: Pursuant to Rule 23(b)(3), the common issues of law and fact identified above predominate over any other questions affecting only individual members of the California Unruh Damages Sub-Class. The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's encounters with visually impaired California residents in its facilities.

B.      Superiority: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

i.      The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

ii.     The individual claims of the Class Members are relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not  totally impossible—to justify individual actions;

iii.    When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA  93101

iv.    This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

v.    Plaintiffs know of no difficulties to be encountered in the management of this action that would preclude its maintenance as a class action;

vi.    A class action will assure uniformity of decisions among Class Members;

v.    The Class is readily identifiable from Defendant's own records and prosecution of this action as a class action will eliminate the possibility of repetitious litigation; and,

vi.    Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action.

40.    Accordingly, this case should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE ADA, TITLE III

**[42 U.S.C. §§ 12101 *et seq.*]**

**(Against all Defendants)**

41.    Plaintiffs restate each and every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth herein.

42.    At all times relevant to this action, Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12181, *et seq.* was in full force and effect and applied to Defendant's conduct.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

15

43.     At all times relevant to this action, the United States Department of Justice regulations implementing Title III of the ADA, 28 C.F.R. Part 36, were in full force and effect and applied to the Defendant's conduct.

44.     At all times relevant to this action, Plaintiffs have been substantially limited in the major life activities of seeing. Accordingly, they are considered individuals with a disability as defined under the ADA, 42 U.S.C. § 12102(2).

45.     Defendant owns, leases, and/or operates patient service centers that are places of public accommodation as defined under Title III of the ADA, 42 U.S.C. § 12181(7)(F). Defendant further operates web-based check-in processes for its patient service centers, which websites and mobile applications are also considered places of public accommodation as defined under Title III of the ADA, 42 U.S.C. §12181(7).

46.     Title III of the ADA prohibits discrimination on the basis of disability "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodations." 42 U.S.C. § 12182(a).

47.     Pursuant to Title III of the ADA and its implementing regulations, a public accommodation cannot deny participation or offer unequal or separate benefits to individuals with disabilities. 42 U.S.C. § 12182(b)(1)(A); 28 C.F.R. §§ 36.202.

48.     Pursuant to Title III of the ADA and its implementing regulations it "shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 42 U.S.C. § 12182(b)(1)(E)

49.     Pursuant to Title III of the ADA and its implementing regulations, a public accommodation shall furnish appropriate auxiliary aids and services to ensure

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

16

effective communication with individual with disabilities. 42 U.S.C. § 12182(b)(2)(A)(iii); 28 C.F.R. § 36.303(b)(1).

50.     Pursuant to Title III of the ADA and its implementing regulations, a public accommodation, in choosing the type of auxiliary aid or service to ensure effective communication, must consider the "method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place." 28 C.F.R. § 36.303(c)(1)(ii).

51.     Pursuant to Title III of the ADA and its implementing regulations, in order to be effective, the type of auxiliary aid or service provided by the public accommodations "must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 36.303(c)(1)(ii). To this end, the Ninth Circuit has explained, "assistive technology is not frozen in time: as technology advances, [ ] accommodations should advance as well." *Enyart v. Nat'l Conference of Bar Examiners, Inc.*, 630 F.3d 1153, 1163 (9th Cir. 2011).

52.     Auxiliary aids and services include, but are not limited to, audio recordings, screen reader software, magnification software, optical readers, secondary auditory programs, large print materials, accessible electronic and information technology, other effective methods of making visually delivered materials available to individuals who are blind or have low vision, and other similar services and actions. 28 C.F.R. §§ 36.303(b)(2), (4).

53.     Defendant discriminated against the individual Plaintiffs on the basis of their disability by denying access to full and equal enjoyment of the goods, services, facilities, privileges, advantages, and/or accommodations of its place of public accommodation, and equal opportunity to participate in and benefit from Defendant's health care services, in violation of the ADA.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

17

54.    Defendant further discriminated against the individual Plaintiffs by failing to ensure effective communication through the specific provision of accessible and effective auxiliary aids and services.

55.    Defendant has violated Title III by, without limitation, failing to take the steps necessary to make their touchscreen kiosks readily accessible and usable by persons with visual impairments and failing to make any of the web-based check in options accessible to patients with visual disabilities, thereby denying individuals with visual disabilities the benefits of the touchscreen kiosks and electronic check-in, providing them with benefits that are not equal to those it provides others, and denying them effective communication.

56.    Defendant has further violated Title III by, without limitation, utilizing administrative methods, practices, and policies that allow its touchscreen kiosks and web-based check in processes to be made available without consideration of consumers who can only participate in and benefit from Defendant's health care services with screen reader programs.

57.    Making their touchscreen kiosks and web-based check in processes readily accessible and usable by persons with visual impairments does not change the content of Defendant's electronic check-in procedure or result in making the electronic check-in procedure different, but rather enables individuals with visual disabilities to access touchscreen kiosks and web-based check-in processes that Defendant already provides.

58.    As set out above, absent injunctive relief there is a clear risk that Defendant's actions will recur with Plaintiffs and/or additional visually impaired persons.

59.    Plaintiffs are therefore entitled to injunctive relief, as well as an award of attorneys' fees, costs, and disbursements pursuant to the ADA, 42 U.S.C. § 12188(a)(1) and/or common law.

CLASS ACTION COMPLAINT

**SECOND CAUSE OF ACTION**

**VIOLATION OF THE UNRUH CIVIL RIGHTS ACT**

**[Cal. Civil Code § 51 *et seq.*]**

**(Against all Defendants)**

60.     Plaintiff Vargas restates each and every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth herein.

61.     The Unruh Civil Rights Act, California Civil Code section 51 provides that:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

Cal. Civ. Code § 51(b).

62.     Defendant is a business establishment within the meaning of the Unruh Act. Defendant is the owner and operator of business establishments.

63.     Defendant violated the Unruh Act by their acts and omissions, as set forth herein. Specifically, LabCorp's system for offering to the public touchscreen check-in kiosks at thousands of locations throughout California is a business establishment within the meaning of Civil Code § 51, *et seq*. LabCorp generates hundreds of millions of dollars in revenue from the appointments which patients check-in for through the use of e-Check-in touchscreen kiosks. The LabCorp's kiosks are an accommodation, advantage, facility, privilege, and service provided by LabCorp, which are inaccessible to blind patrons. This inaccessibility denies blind patients full and equal access to the accommodations, advantages, facilities, privileges, and services that Defendant makes available to the non-disabled public, in violation of the Unruh Civil Rights Act, California Civil Code § 51, et seq. These

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

19

violations are ongoing.

64.     Defendant's actions constitute intentional discrimination against the class on the basis of a disability in violation of California Civil Code §§51, et seq. Defendant is aware of the complete lack of access of the touchscreen check-in kiosks to blind persons yet has deliberately chosen to provide a benefit and service that is inaccessible to the blind.

65.     Defendant is additionally violating California Civil Code § 51, in that the conduct alleged herein constitutes a violation of various provisions of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq*., as set forth above. California Civil Code § 51(f) provides that a violation of the right of any individual under the ADA shall also constitute a violation of the Unruh Civil Rights Act.

66.     The actions of Defendant were and are in violation of the Unruh Civil Rights Act, California Civil Code §§ 51, *et seq*., and therefore Plaintiff Vargas is entitled to injunctive relief remedying the discrimination. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiffs and members of the class will continue to suffer irreparable harm.

67.     Plaintiff Vargas and the California class are further entitled to statutory minimum damages pursuant to California Civil Code § 52 for every individual violation; i.e., each time a legally blind individual had to try to check-in using the inaccessible touchscreen kiosk.

### **THIRD CAUSE OF ACTION**

### **VIOLATION OF THE DISABLED PERSONS ACT**

### **[Cal. Civil Code §§ 54-54.3.]**

### **(Against all Defendants)**

68.     Plaintiffs restate each and every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth herein.

69.     California Civil Code §§ 54-54.3 guarantee full and equal access for

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

20

people with disabilities to all accommodations, advantages, facilities, and privileges of "all places of public accommodation" and "other places to which the general public is invited." LabCorp's thousands of patient service center locations throughout California featuring the inaccessible e-Check-in touchscreen kiosks constitute "places of public accommodation" or "other places where the public is invited" within the meaning of California Civil Code §§ 54-54.3.

70.     LabCorp's patient services locations constitute accommodations, advantages, facilities, and privileges provided by Defendant to members of the public in California and are, therefore, subject to the access requirements of California Civil Code § 54.1 applicable to "all places of public accommodation" and "other places to which the general public is invited."

71.     Defendant is violating the right of visually disabled persons to full and equal access to public places by denying full and equal access to LabCorp's e-Check-in touchscreen kiosks in violation of California Civil Code §§ 54-54.3.

72.     Defendant is also violating California Civil Code §§ 54-54.3, in that its actions are a violation of the ADA. Any violation of the ADA is also a violation of California Civil Code § 54.1.

73.     As a result of Defendant's wrongful conduct, the individually-named Plaintiff Vargas and the California sub-class are entitled to statutory minimum damages under California Civil Code § 54.3 for each offense.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and the members of the Class, pray for:

a.     A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant took no action that was reasonably calculated to ensure that its touchscreen kiosks were fully accessible to,

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

21

1    and independently usable by, individuals with visual disabilities;

2    b.    A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28

3          CFR § 36.504(a) , and California Civil Code, § 51 *et seq.,* which directs

4          Defendant to take all steps necessary to bring its touchscreen kiosks

5          into full compliance with the requirements set forth in the ADA, and its

6          implementing regulations, so that its touchscreen kiosks are fully

7          accessible to, and independently usable by individuals with visual

8          disabilities, and which further directs that the Court shall retain

9          jurisdiction for a period to be determined to ensure that Defendant has

10         adopted and is following an institutional policy that will in fact cause it

11         to remain fully in compliance with the law—the specific injunctive

12         relief requested by Plaintiffs are described more fully in paragraph 9

13         above.

14   c.    A permanent injunction enjoining Defendant from continuing its

15         discriminatory conduct;

16   d.    An Order certifying the classes proposed by Plaintiffs, naming

17         Plaintiffs as class representatives, and appointing their counsel as class

18         counsel;

19   e.    Payment of statutory damages, in accordance with California Civil

20         Code §§ 52(a) and 54.3 to the California sub-class;

21   f.    Payment of costs of suit;

22   g.    Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205,

23         28 CFR § 36.505, Cal. Civil Code §52, and Civ. Proc. Code § 1021.5,

24         including costs of monitoring Defendant's compliance with the

25         judgment (*see Gniewkowski v. Lettuce Entertain You Enterprises, Inc.*,

26         Case No. 2:16-cv-01898-AJS (W.D. Pa. Jan. 11, 2018) (ECF 191)

27         ("Plaintiffs, as the prevailing party, may file a fee petition before the

28         Court surrenders jurisdiction. Pursuant to *Pennsylvania v. Delaware*

22

1            *Valley Citizens' Council for Clean Air*, 478 U.S. 546, 559 (1986),

2            *supplemented*, 483 U.S. 711 (1987), the fee petition may include costs

3            to monitor Defendant's compliance with the permanent injunction.");

4            *see also Access Now, Inc. v. Lax World, LLC*, No. 1:17-cv-10976-DJC

5            (D. Mass. Apr. 17, 2018) (ECF 11) (same);

6      h.    Award of prejudgment interest pursuant to California Civil Code

7            §3291;

8      i.    An Order retaining jurisdiction over this case until Defendant has

9            complied with the Court's Orders; and,

10     j.    The provision of whatever other relief the Court deems just, equitable

11           and appropriate.

12

13 Dated: January 28, 2020           NYE, STIRLING, HALE & MILLER, LLP

14                         By:  */s/ Jonathan D. Miller*

15                         Jonathan D. Miller, Esq.

                           Alison M. Bernal, Esq.

16                         33 W. Mission Street, Suite 201

17                         Santa Barbara, CA 93101

                           Telephone: 805-963-2345

18                         jonathan@nshmlaw.com

19                         alison@nshmlaw.com

20                         THE SWEET LAW FIRM, P.C.

21

22                         By:  */s/ Benjamin J. Sweet*

23                         Benjamin J. Sweet, Esq.

                           *(to be admitted pro hac vice)*

24                         1145 Bower Hill Drive, Ste 104

25                         Pittsburgh, PA 15243

                           Telephone: 412-857-5350

26                         ben@sweetlawpc.com

27                         *Attorneys for Plaintiffs LUKE DAVIS,*

28                         *JULIAN VARGAS, and the Class*

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

23

1

## DEMAND FOR JURY TRIAL

2      Plaintiffs LUKE DAVIS and JULIAN VARGAS hereby demand a trial by

3  jury of all claims so triable in the above-referenced matter.

4

5      Dated: January 28, 2020                NYE, STIRLING, HALE & MILLER, LLP

6                                             By:   _/s/  Jonathan D. Miller_____
7                                             Jonathan D. Miller, Esq.
                                              Alison M. Bernal, Esq.
8                                             33 W. Mission Street, Suite 201
                                              Santa Barbara, CA 93101
9                                             Telephone: 805-963-2345
                                              jonathan@nshmlaw.com
10                                            alison@nshmlaw.com

11

12                                            THE SWEET LAW FIRM, P.C.

13
                                              By:   _/s/  Benjamin J. Sweet_____
14                                            Benjamin J. Sweet, Esq.
                                              *(to be admitted pro hac vice)*
15                                            1145 Bower Hill Drive, Ste 104
                                              Pittsburgh, PA 15243
16                                            Telephone: 412-857-5350
                                              ben@sweetlawpc.com
17

18
                                              *Attorneys for Plaintiffs LUKE DAVIS,*
19                                            *JULIAN VARGAS, and the Class*

20

21

22

23

24

25

26

27

28

24

CLASS ACTION COMPLAINT