Robert I. Steiner (admitted *pro hac vice*)
rsteiner@kelleydrye.com
**KELLEY DRYE & WARREN LLP**
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Telephone: (212) 808-7800
Facsimile: (212) 808-7897

Becca Wahlquist (State Bar No. 215948)
bwahlquist@kelleydrye.com
**KELLEY DRYE & WARREN LLP**
350 South Grand Avenue, Suite 3800
Los Angeles, CA 90071
Telephone: (213) 547-4900
Facsimile: (213) 547-4901

*Attorneys for Defendant*
*Laboratory Corporation of America Holdings*

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LUKE DAVIS, et al.<br><br>Plaintiffs,<br><br>v.<br><br>LABORATORY CORPORATION OF AMERICA HOLDINGS, et al.<br><br>Defendants. | CASE NO. 2:20-CV-00893-FMO-KS<br><br>**DEFENDANT LABORATORY CORPORATION OF AMERICA HOLDINGS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO REFINE CLASS DEFINITIONS**<br><br>Hr'g Date: July 21, 2022<br>Time: 10:00 a.m.<br>Location: Courtroom 6D<br>FAC Filed: September 3, 2020<br>Trial Date: Not Yet Set |

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................ 1

ARGUMENT ............................................................................................. 2

**I.** THE CURRENTLY CERTIFIED CLASSES ARE FAIL-SAFE. ...... 2

**II.** THE FAIL-SAFE CLASSES CANNOT BE "REFINED" INTO CLASSES WITH FAIL-SAFE MEMBERSHIPS. ............................... 5

**III.** NO "REFINEMENT" TO THE RULE 23(B)(3) CALIFORNIA SUB-CLASS CAN RENDER IT CERTIFIABLE. ............................. 8

CONCLUSION ........................................................................................ 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Botosan v. Paul McNally Realty*,
216 F.3d 827 (9th Cir. 2000) ........ 13

*Dixon v. Monterey Fin. Servs., Inc.*,
No. 15-cv-3298, 2016 WL 4426908 (N.D. Cal. Aug. 22, 2016) ........ 4

*Donald v. Café Royale, Inc.*,
218 Cal.App.3d 168 (1990) ........ 13

*Doran v. 7-Eleven, Inc.*,
509 Fed. App'x 647 (9th Cir. 2013) ........ 12, 13

*Gannon v. Network Telephone Services, Inc.*,
No. 12-cv-9777, 2013 WL 2450199 (C.D. Cal. June 5, 2013) ........ 3, 4

*Kamar v. RadioShack Corp.*,
375 Fed. App'x 734 (9th Cir. 2010) ........ 3, 7

*Melgar v. CSK Auto, Inc.*,
681 Fed. App'x 605 (9th Cir. 2017) ........ 3

*Messner v. Northshore Univ. HealthSystem*,
669 F.3d 802 (7th Cir. 2012) ........ 3

*Moeller v. Taco Bell Corp.*,
No. C 02-5849 PJH, 2012 WL 3070863 (N.D. Cal. July 26, 2012) ........ 13

*Mullins v. Direct Digital, LLC*,
795 F.3d 654 (7th Cir. 2015) ........ 7

*Nevarez v. Forty Niners Football Co., LLC*,
326 F.R.D. 562 (N.D. Cal. 2018) ........ 11

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) ........ 5

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) .......... *passim*

*Pepka v. Kohl's Dept. Stores, Inc.*, No. 16-cv-4293, 2016 WL 8919460 (C.D. Cal. Dec. 21, 2016) .......... 4

*Russell v. Tyson Farms, Inc.*, No. 19-cv-1179, 2020 WL 3051241 (N.D. Ala. Jun. 8, 2020) .......... 8

*TransUnion LLC v. Ramirez*, 141 S.Ct. 2190 (2021) .......... 1, 13

*Vargas v. Quest Diagnostics Clinical Labs., Inc.*, No. 19-cv-8108, 2021 WL 5989958 (C.D. Cal. Dec. 2, 2021) .......... *passim*

*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012) .......... 3

*Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F.Supp.3d 610 (E.D. Pa. 2015) .......... 3

**Statutes**

Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213 .......... 3, 6, 10

Rehabilitation Act, 29 U.S.C. § 794, et seq. .......... 3

The Patient Protection and Affordable Care Act, 5 U.S.C. § 8116 .......... 3

California Unruh Civil Rights Act, Cal. Civ. Code § 51 .......... *passim*

**Other Authorities**

Fed. R. Civ. P. 23 .......... *passim*

## **INTRODUCTION**

The Ninth Circuit in *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) made clear that "fail-safe" classes are impermissible and cannot be certified. *Id.* at 669 n.14. Plaintiffs acknowledge, as they must, the impact that *Olean* has on the currently certified classes in this case and as a result have moved the Court to "refine" the previously certified class definitions, which are fail-safe. But as Labcorp explained to Plaintiffs during the meet-and-confer on this Motion, the new class definitions they propose continue to be fail-safe. This is because membership in the class is entirely contingent on whether that person has a claim under Plaintiffs' legal theories.

As detailed below in Part I, the Rule 23(b)(2) and 23(b)(3) certified classes are fail-safe and should be decertified. The Court should not "refine" the class definitions to those now proposed by Plaintiffs, because Plaintiffs admit their new definitions would still include as class members the **exact same individuals** who currently populate the fail-safe classes. *See* Dkt. No. 107-1 at 3 ("Plaintiffs' refined classes are intended to be **identical in every way to the certified classes…**") (emphasis added)). Thus, this is not "refinement" at all. Indeed, the newly proposed definition is even more broad than the existing one because it clearly includes those who were "unable" or did not seek to access the kiosk for a plethora of reasons, including those having nothing to do with Plaintiffs' theory of liability and thus have no injury, and who would not ultimately have claims under that theory. *See TransUnion, LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) (each class member must possess Article III standing).[1] As explained in Part II, Plaintiffs

[1] Plaintiffs are clear that they "seek refinement to remove any claim by [Labcorp] that the current class definitions contain 'fail-safe' language.'" (Dkt. No. 107-1 at 2.) Plaintiffs then argue in a footnote that "[r]efining the class definitions . . . would resolve the gravamen of Defendant's pending Rule 23(f) appeal, as it would render

cannot simply eliminate some language from their definitions while retaining the fail-safe infirmity that exists in their prior class definition.

Finally, as addressed in Part III, should the Court consider altering the class definitions, it should recognize that *Olean*'s restriction on fail-safe classes at the very least prevents the certification of the Rule 23(b)(3) damages sub-class here. Plaintiffs propose an overbroad class from which uninjured persons will later be jettisoned after individual inquiries—a class that cannot meet the predominance and superiority requirements. Injury from an alleged Unruh Act violation is part of any merits determination and certain class members who are "unable to use" a kiosk will have no injury at all because, for example, they preferred to check in at the front desk with a Labcorp employee and never attempted to (or wanted to) check in at a kiosk. After *Olean* and *TransUnion,* Plaintiffs cannot simply plan to drop all uninjured legally blind persons from class membership after individual inquiries into whether those members have claims under Plaintiffs' legal theory.

Plaintiffs' Motion to Refine has put the fail-safe issue squarely before this Court, and neither the current definitions nor the new ones they propose now can stand. Accordingly, Plaintiffs' motion should be denied and their proposed "refined" classes should not be certified.

## ARGUMENT

### I. THE CURRENTLY CERTIFIED CLASSES ARE FAIL-SAFE.

While it was until recently a matter of dispute whether the Ninth Circuit

---

the issue moot." (Dkt. No. 107-1 at 2 n.1.) However, this is not the case. Labcorp's Rule 23(f) petition primarily seeks review to address the intra-circuit inconsistency on when Rule 23(b)(3) Unruh Act damages classes are certifiable, as well as asking the Ninth Circuit to address other legal issues tied to certification. *See Davis v, Laboratory Corp. of America Holdings*, No. 22-80053, Dkt. No. 1-2 (9th Cir. June 6, 2022) (Labcorp's Rule 23(f) petition).

precluded fail-safe classes, it is now clear that "[a] court *may not* . . . create a 'fail safe' class that is defined to include only those individuals who were injured by the allegedly unlawful conduct." *Olean*, 31 F.4th 651 at 669 n.14 (emphasis added) (citations omitted). A class definition is impermissibly "fail-safe" if it is defined in a manner wherein "a class member either wins, or by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Id.* (quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012)). Stated differently, a fail-safe class is "one that includes *only* those who are *entitled* to relief." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012). A fail-safe class is "prohibited because it would allow putative class members to seek a remedy but not be bound by an adverse judgment." *Id.* (citation omitted). Accordingly, such classes are "palpably unfair to the defendant." *Kamar v. RadioShack Corp.*, 375 Fed. App'x 734, 736 (9th Cir. 2010).

Here, both of the certified class definitions are textbook fail-safe classes. In order to be a member of Plaintiffs' proposed classes, each class member must prevail on their claims under Plaintiffs' theory of the case, *i.e.*, by establishing they are legally blind and unable to use the kiosk because of that disability. Therefore, membership within the proposed definitions is intertwined with Plaintiffs' ADA, RA, ACA and Unruh Act claims because "whether a person qualifies as a member depends on whether that person has a valid claim." *Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F.Supp.3d 610, 623 (E.D. Pa. 2015) (quoting *Messner*, 669 F.3d at 825); *see also Melgar v. CSK Auto, Inc.*, 681 Fed. App'x 605, 607 (9th Cir. 2017) ("A fail-safe class is commonly defined as limiting membership to plaintiffs described by their theory of liability in the class definition such that the definition presupposes success on the merits.")

*Gannon v. Network Telephone Services, Inc.*, No. 12-cv-9777, 2013 WL 2450199 (C.D. Cal. June 5, 2013) is instructive. In *Gannon*, the putative Telephone

Consumer Protection Act ("TCPA") class consisted of all person in the United States who received at least one or more "*unauthorized* text messages sent by or on behalf of defendants." *Id.* at *2. In other words, membership of the proposed class turned on whether the class members had a valid TCPA claim. In denying plaintiff's motion for class certification, the Court reasoned:

> The Court cannot determine whether an individual is part of the class without extensive individual inquiry into the merits of Plaintiff's claim, which ultimately makes identification of the class administratively unfeasible. . . . Plaintiffs' class definition would require individual inquiry into whether the potential class members consented to receiving text messages. . . . Based on these facts, the Court would have to hold mini-trials to determine who received unauthorized text messages and thus, who is a class member. . . . [S]ignificant inquiry as to each individual class member would be required, as well as inquiry into the merits of the claim.

*Id.* at *2-3 (internal citations and quotation marks omitted).

Similarly, here, because membership in Plaintiffs' classes turns on whether members have a valid claim under Plaintiffs' legal theory, the classes are fail-safe. *See Pepka v. Kohl's Dept. Stores, Inc.*, No. 16-cv-4293, 2016 WL 8919460, at *4 (C.D. Cal. Dec. 21, 2016) (striking class allegations that were fail-safe because "[d]eciding who fell into Plaintiff's proposed class would require the Court to engage in an improper merits evaluation to determine who is in the class") (citation omitted); *Dixon v. Monterey Fin. Servs., Inc.*, No. 15-cv-3298, 2016 WL 4426908, at *2 (N.D. Cal. Aug. 22, 2016) (striking class allegations as fail-safe where "a determination of whether a person is a member of the class is dependent on whether he/she prevails on the merits of the TCPA claim alleged in the operative pleading.")

Because fail-safe classes are impermissible under *Olean*, this Court should decertify the classes. *See* Fed. R. Civ. P. 23(c)(1) (a class certification order "may

be altered or amended before final judgment"); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 633 (9th Cir. 1982) (affirming that a "district court's order respecting class status . . . is inherently tentative" prior to final judgment on the merits.) And while it is true that a faulty class definition can at times be refined prior to certification, as further addressed below, Plaintiffs' proposed "refinements" to the class definitions do not change the fail-safe nature of the class memberships and thus cannot be adopted by the Court.

## II. THE FAIL-SAFE CLASSES CANNOT BE "REFINED" INTO CLASSES WITH FAIL-SAFE MEMBERSHIPS.

Significantly, while Plaintiffs style their motion as a Motion to Refine Class Definitions, ostensibly to cure the fail-safe problem of the currently defined classes in that they include only those who are entitled to relief, Plaintiffs concede that their purported modification has done nothing to alter class membership at all, stating, "**Plaintiffs' refined classes are intended to be identical in every way to the certified classes**[.]" (Dkt. No. 107-1 at 3) (emphasis added). Plaintiffs thus intend exactly the same membership contained in the certified classes—legally blind persons unable to use kiosks because the kiosks were not independently accessible to those persons. Here are the proposed memberships that Plaintiffs assert are actually "identical in every way" to those currently certified:

| **CURRENT** | **PROPOSED** |
|---|---|
| **Nationwide Class** | |
| All legally blind individuals in the United States who visited a LabCorp patient service center in the United States and were denied full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations due to LabCorp's failure to make its echeck-in kiosks accessible to legally blind individuals. | All legally blind individuals who visited a LabCorp patient service center with a LabCorp Express Self-Service kiosk in the United States during the applicable limitations period, but were unable to use the LabCorp Express Self-Service kiosk. |

| California Class | |
|---|---|
| All legally blind individuals in California who visited a LabCorp patient service center in California and were denied full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations due to LabCorp's failure to make its e-check-in kiosks accessible to legally blind individuals. | All legally blind individuals who visited a LabCorp patient service center with a LabCorp Express Self-Service kiosk in California, but were unable to use the LabCorp Express Self-Service kiosk. |

(Dkt. No. 107-1 at 8.)

Plaintiffs have dropped some of the language more closely tied to their theory of ADA violations in an attempt to disguise the continued fail-safe nature of the classes, and now define class membership as all legally blind persons "unable to use" the kiosk. However, a class (particularly a Rule 23(b) class) cannot be certified so broadly as to include persons "unable to use" a Labcorp kiosk, including, for example: (i) persons visiting a patient service center ("PSC") without an operational kiosk; or (ii) persons who preferred to (and did) check in at the front desk, as 25% of all Labcorp PSC patients do; or (iii) persons who (like Plaintiff Vargas) were directed to check in at the front desk and never attempted to use a kiosk or may not have even known a kiosk existed at a particular PSC. Plaintiffs' "refined" class definitions include individuals in all of these situations, making the revised definitions overbroad. Instead of addressing this infirmity, Plaintiffs double down and assert that the proposed classes would be "**identical in every way**" to the certified fail-safe classes. Those classes are impermissible because they contain persons who were allegedly denied access to Labcorp's services due to an inaccessible kiosk, even when there was an appropriate auxiliary aid available (*i.e.*, desk check-in).

Essentially, Plaintiffs are trying to avoid more obvious fail-safe language

while still seeking certification of the same fail-safe class of persons who Plaintiffs believe have ADA claims (and California-based claims tied to the ADA claims) **because** an independently accessible kiosk was not available to them. This is based on Plaintiffs' legal theory that an independently accessible kiosk would be required by the ADA, and that the desk check-in available at every PSC is not a reasonable accommodation. The proposed classes are designed to include only those persons who "either win[] or, by virtue of losing, [are] defined out of the class and [are] therefore not bound by the judgment." *Olean*, 31 F.4th at n.14. For example, if members of the California class are shown to have no Unruh Act claim, they will fall out of the proposed definition. That is precisely what is forbidden by *Olean*'s fail-safe class proscription due to the "palpably unfair" result to Labcorp. *Kamar*, 375 Fed. App'x at 736.

Plaintiffs rely on *Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015), for their argument that the proposed refined class definitions are not fail-safe because they are subject to "objective criteria," but this reliance is misplaced. As Judge Gee recognized in rejecting this same argument in the other case brought by Plaintiffs Vargas and American Council for the Blind against Labcorp competitor Quest Diagnostics, on the same theories of liability for PSC kiosk check-ins:

> . . . while there may be objective, non-legal criteria that map onto the Class definition (e.g., visually impaired individuals who attempted to but could not use Quest's kiosks), Plaintiffs' Class is explicitly defined in terms of the legal injury to Class Members. It therefore appears that any Class Member who did not suffer a legal injury would be defined out.

*Vargas v. Quest Diagnostics Clinical Labs, Inc.*, No. 2:19-cv-0818-DMG-MRW, Dkt. No. 228 at 4-5 (C.D. Cal. June 17, 2022).

The same is true for Plaintiffs' proposed refined classes here. There is non-legal criteria "mapped onto" the class definition, but the core of membership is a

"denial" due to an inaccessible kiosk so that any class member—particularly one asserting Unruh Act claims—would fall out of the class if he or she was unable to prove damage and proximate causation, and therefore ultimate liability. This is the very definition of an impermissible fail-safe class. *See, e.g. Russell v. Tyson Farms, Inc.*, No. 19-cv-1179, 2020 WL 3051241 (N.D. Ala. Jun. 8, 2020), at *2 (striking fail-safe class definitions on that basis, "because the plaintiffs will be required to prove damages and proximate causation at trial, there runs the possibility of a set of plaintiffs who, unable to provide damages and proximate causation – and therefore ultimate liability – would, by virtue of that failure, not be included in the class. Consequently, those plaintiffs would not be bound by the judgment.").

Plaintiffs' new proposed definitions that they intend to contain the "identical" membership of patently fail-safe classes should not be adopted by this Court.[2]

## III. NO "REFINEMENT" TO THE RULE 23(B)(3) CALIFORNIA SUB-CLASS CAN RENDER IT CERTIFIABLE.

Finally, the recent developments and pleadings filed by the same Plaintiffs here in the *Quest* litigation, and facts provided by Labcorp during the certification briefing, make clear that at the least, a Rule 23(b)(3) class cannot be certified now that fail-safe classes are prohibited in the Ninth Circuit.

As this Court is aware, in *Vargas v. Quest Diagnostics Clinical Labs., Inc.*, No. 19-cv-8108, 2021 WL 5989958 (C.D. Cal. Dec. 2, 2021), Judge Gee certified a fail-safe injunctive Rule 23(b)(2) almost identical to that certified here, after she noted that (as of the date of her original order) fail-safe classes were permitted in the

---

[2] If the proposed "refined" membership is **not** identical to that of the current fail-safe classes, as Plaintiffs have claimed in the Motion, then Plaintiffs should be required to explain their new proposed classes in a motion to certify, and Labcorp is entitled to oppose certification of these different classes.

Ninth Circuit. But then on May 11, 2022, Judge Gee issued an order asking the parties to address whether the Court should decertify or redefine the certified injunctive relief class in light of *Olean*'s prohibition on fail-safe classes. *See Vargas v. Quest Diagnostics Clinical Labs, Inc*., No. 2:19-cv-0818-DMG-MRW, Dkt. No. 211. In response to that Order, Plaintiffs filed a brief acknowledging "the Ninth Circuit's newly announced prohibition against fail-safe classes" at least for Rule 23(b)(3) classes, and asked Judge Gee to "refine" the injunctive relief class definition, arguing that Rule 23(b)(2) injunctive relief classes can be defined broadly and can include uninjured persons. *See Vargas v. Quest Diagnostics Clinical Labs, Inc*., No. 2:19-cv-0818-DMG-MR, Dkt. No. 220, at 5, 13.

Plaintiffs claimed that the core concern of a fail-safe rule does not apply in Rule 23(b)(2) classes, where (unlike in damages classes) the district court need not conduct mini-trials regarding class membership. *See id.* at 17-18 & 17 n.11. Plaintiffs then proposed the following redefinition of the Rule 23(b)(2) class:

> All legally blind individuals in the United States who visited a Quest patient service center during the Class Period and were not assisted with check in by a Quest employee.

*Id.* at 18. *See also Vargas v. Quest Diagnostics Clinical Labs, Inc*., No. 2:19-cv-0818-DMG-MRW, Dkt. No. 228 at 2. Plaintiffs argued that this new definition would be subject to objective determination and would "encompass all legally blind individuals in the United States who were denied effective communication by Quest during the Class Period." *See Vargas,* No. 2:19-cv-0818-DMG-MR, Dkt. No. 220 at 18.

Tellingly, Plaintiffs in the Quest case **thus conceded that being assisted with check-in by a PSC employee would not be a denial of effective communication by Quest**. But here, the evidence is that Vargas experienced no such denial of check-in assistance. Instead, Vargas was provided with effective

communication when he was assisted with check-in by Labcorp PSC staff on both his visits and checked-in at the front desk.[3] Vargas himself thus could not be a member of a class of persons who "were not assisted with check-in," which is likely why Plaintiffs proposed a different definitional "refinement" to this Court.

Judge Gee did redefine the injunctive relief class in a manner that she believed avoided fail-safe issues for a 23(b)(2) class, and crafted her own definition so that the injunctive class would include legally blind persons visiting a Quest PSC "at which the e-check-in self-service kiosk was the primary method for check-in and who, due to their disability, could not use all the functions of the kiosks." *Vargas*, No. 2:19-cv-0818-DMG-MRW, Dkt. No. 228 at 6. (Labcorp does not believe such an injunctive class should have been certified, when there was no evidence that a common remedy for any alleged ADA violations would apply to the certified class.)

Plaintiffs also asked Judge Gee to reconsider her denial of the Rule 23(b)(3) class in light of this Court's findings on superiority and predominance in regards to the California sub-class certified against Labcorp, but Judge Gee did not grant that request. Judge Gee had denied Plaintiff Vargas's request to certify a California Unruh Act class because:

> Under Vargas's theory of the case each putative class member must show only (1) that he or she is legally blind and (2) that he or she visited a patient service center *with* a kiosk and *without* a staffed desk (3) during the class

---

[3] *See* JA0158, JA0170-72, *id.* at 22:1-13, 34:4-35:6, 35:21-36:5 (deposition testimony establishing that during Vargas's pre-appointment visit to a PSC, he was told, "[a]ll I needed to do was come to the window or the desk at the date of the appointment, you know, the day that I needed the service, and that they would make someone available to help me with the check-in process."). When he did return the next day for testing services, he went to the front desk to be checked in for service. JA0158 at 22:14-19). After waiting at a short line at the counter, he was checked in. *See* JA0161, 1065 at 25:3-17, 29:6-9.

> period.
>
> Under the circumstances, however, demonstrating these basic factual elements will essentially require each putative class member to litigate her own individual Unruh Act case.

*Vargas*, 2021 WL 5989958, at *9 (C.D. Cal. Dec. 2, 2021). Thus, Judge Gee came "to the ineluctable conclusion that individualized issues will predominate over common ones with respect to the California sub-class." *Id.* She also held that class procedures were not superior.

When the Court here certified the fail-safe Rule 23(b)(3) Unruh Act claims class, finding predominance of common issues and superiority instead of agreeing with Judge Gee's analysis, it followed the lead of the court in *Nevarez v. Forty Niners Football Co., LLC*, 326 F.R.D. 562 (N.D. Cal. 2018), which had also certified a fail-safe Rule 23(b)(3) class. *See id.* at 572 (certifying three classes of "persons with mobility disabilities who use wheelchairs, scooters, or other mobility aids who will attempt to purchase accessible seating for a public event. . . **and who will be denied equal access to** [a stadium's] facilities, services, accessible seating, parking, amenities, and privileges, including ticketing") (emphasis added)). Fail-safe classes can often give the appearance of predominance and superiority, because only injured persons are included in the class, and so claims can appear to be common across the class members.

But, even putting aside any alternate basis that this Court may have had to distinguish the facts in *Quest* from this case or to reject Judge Gee's legal conclusion, with fail-safe Rule 23(b)(3) classes now barred in this Circuit, Plaintiffs' new proposed definition of persons who were "unable to use" a kiosk would obviously include non-injured legally blind persons—such as those who preferred to and did check in at the PSC front desk, or those who visited a PSC without an

operational kiosk. It is thus even more evident now that individualized inquiries would be required to assess the viability of each member's Unruh Act claim.

Here, even if Vargas argued that checking in at the front desk caused him difficulty, discomfort, or embarrassment, his own experience cannot be imputed to other California residents who are legally blind and "unable to use" a kiosk. Not all California PSC's even have kiosks (*see* JA1064, Sinning Dep. at 40:3-12), and for those that do, staffing varies widely depending on location and a PSC's size: some locations have a dedicated patient intake representative ("PIR") who sits full time at the front desk to check in patients; others have phlebotomists to conduct both check in and testing; and some PSCs are located inside Walgreens stores where there is always a dedicated Walgreens staff member to assist patients. (JA1067-68, JA1069-70 *id.* at 47:22-48:4, 78:3-8; 79:12-21.) Labcorp provided evidence that approximately 25% of all PSC patients check in at the front desk, even after the kiosk rollout. (JA1191, Deal Rpt., Ex. 4, PSC Check-in Metrics.) Moreover, upwards of 10% of PSC patients check-in online before arriving at the PSC. (*Id.*) And it is likely that a higher percentage of legally blind persons check in at the front desk (as Plaintiff Vargas and ACB member Harden did, and prefers to do) or online (as Plaintiff Davis has done).

Indeed, because of the Unruh Act's injury requirements, only a fail-safe class that eliminates uninjured persons from class membership (like the fail-safe class certified in *Nevarez*) could seem to avoid predominance and superiority issues because uninjured persons would be excluded. As Labcorp explained in its opposition to certification, to recover statutory damages under the Unruh Act, a class member must show they "personally encountered" an Unruh Act violation that caused them difficulty, discomfort, or embarrassment. *See, e.g., Doran v. 7-Eleven, Inc.*, 509 Fed. App'x 647, 648 (9th Cir. 2013) (affirming denial of statutory damages under the Unruh Act because the plaintiff did not prove he personally encountered a

violation and experienced difficulty, discomfort, or embarrassment). *See also Botosan v. Paul McNally Realty*, 216 F.3d 827, 835 (9th Cir. 2000) ("[I]n order to maintain an action for damages under the Unruh Civil Rights Act, an individual must take the additional step of establishing that he or she was denied access on a particular occasion.") (internal quotations omitted). Similarly, "California courts have held that to maintain an action under the CDPA, a plaintiff must establish that he or she was denied equal access to a public facility on a particular occasion." *Moeller v. Taco Bell Corp.*, No. C 02-5849 PJH, 2012 WL 3070863, at *4 (N.D. Cal. July 26, 2012), citing *Donald v. Café Royale, Inc.*, 218 Cal.App.3d 168, 183 (1990).

Moreover, the *Olean* Court recently recognized the Supreme Court's directive that "[e]very class member must have Article III standing in order to recover individual damages," and cautioned: "Rule 23 also requires a district court to determine whether individualized inquiries into this standing issue would predominate over common questions." *Olean*, 31 F.4th at 669 n.12 (quoting *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2208 (2021)).

## **CONCLUSION**

Plaintiffs' motion to refine the class definitions should be denied and the Court should decertify the classes. Plaintiffs' proposed "refinements" to the class should not be accepted, given their claim that the class memberships are "identical" the certified fail-safe classes, and the failure to provide a certifiable definition for the California sub-class in particular.

Finally, should Plaintiffs be permitted the opportunity to attempt once more to certify a class with another proposed definition, Labcorp should be given a full opportunity to oppose that motion, so that the Rule 23(a) and (b) factors can be addressed in light of any newly-defined proposed class.

DATED: June 30, 2022

KELLEY DRYE & WARREN LLP

By: *<u>/s/ Becca Wahlquist</u>*
Robert I. Steiner (admitted *pro hac vice*)
Becca Wahlquist (State Bar No. 215948)
Glenn T. Graham (State Bar No. 338995)
Nathan T. Jamieson (State Bar No. 333304)

*Attorneys for Defendant Laboratory Corporation of America Holdings*