# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUKE DAVIS, JULIAN VARGAS, et al., | Case No. CV 20-0893 FMO (KSx) |
| Plaintiffs, | |
| v. | **ORDER RE: MOTION TO REFINE CLASS DEFINITION** |
| LABORATORY CORPORATION OF AMERICA HOLDINGS, | |
| Defendant. | |

Having reviewed and considered all the briefing filed with respect to plaintiffs' Motion to Refine Class Definitions, (Dkt. 107, "Motion"), the court finds that oral argument is not necessary to resolve the Motion, see Fed. R. Civ. P. 78(b); Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.[1]

## BACKGROUND[2]

On May 23, 2022, the court granted Luke Davis ("Davis") and Julian Vargas's ("Vargas" and together with Davis, "plaintiffs") motion for class certification in connection with their complaint against Laboratory Corporation of America Holdings ("defendant" or "LabCorp"), and certified the following classes:[3]

---

[1] Capitalization, quotation marks, punctuation, and emphasis in record citations may be altered without notation.

[2] The court hereby incorporates its Order of June 13, 2022 (Dkt. 103, "Amended Class Cert. Order").

[3] Because of the similarly of the class definitions, the court will refer to them in the singular.

> Nationwide Injunctive Class: All legally blind individuals in the United States who visited a LabCorp patient service center in the United States during the applicable limitations period and were denied full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations due to LabCorp's failure to make its e-check-in kiosks accessible to legally blind individuals.
>
> California Class: All legally blind individuals in California who visited a LabCorp patient service center in California during the applicable limitations period and were denied full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations due to LabCorp's failure to make its e-check-in kiosks accessible to legally blind individuals.

(See Dkt. 97, Court's Order of May 23, 2022, at 24).

Approximately one month before the court issued its decision, the Ninth Circuit, in an en banc decision, stated that "[a] court may not . . . create a 'fail safe' class that is defined to include only those individuals who were injured by the allegedly unlawful conduct."[4] Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods, LLC, 31 F.4th 651, 669 n. 14 (9th Cir. 2022) (en banc). LabCorp provided the court with a copy of its Rule 23(f) Petition for Permission to Appeal Order Granting Class Certification ("Petition") in which it argues, among other things, that the court

---

[4] The court was aware of, and even cited, the Olean decision in its class certification order. (See, e.g., Dkt. 97, Court's Order of May 23, 2022, at 4, 17). However, the court did not address whether plaintiffs' proposed class definition constituted a fail-safe class because defendant did not raise the argument for the court to rule on it. See Yamada v. Nobel Biocare Holding AG, 825 F.3d 536, 543 (9th Cir. 2016) (an "argument must be raised sufficiently for the trial court to rule on it" to preserve it for appellate review); (Dkt. 103, Amended Class Cert. Order at 5 n. 4) ("To the extent LabCorp may be challenging the nationwide class on the ground that it is a fail-safe class, the court rejects the challenge, as defendant merely referenced a 'fail-safe class' in its 'Introductory Statement[,]'); (see Dkt. 66-1, Joint Br. at 6); it provided no argument or authority to support its challenge."); Beasley v. Astrue, 2011 WL 1327130, *2 (W.D. Wash. 2011) ("It is not enough merely to present an argument in the skimpiest way, and leave the Court to do counsel's work – framing the argument, and putting flesh on its bones through a discussion of the applicable law and facts.").

erred in certifying "fail-safe" classes. (See Petition at 13-14). Plaintiffs now seek to redefine the certified classes "to remove any claim . . . that the current class definitions contain 'fail safe' language[.]" (Dkt. 107-1, Memorandum of Points and Authorities in Support of Plaintiffs' Motion to Refine Class Definitions ("Memo") at 2).

## DISCUSSION

Pursuant to Rule 23 of the Federal Rules of Civil Procedure,[5] "[a]n order that grants . . . class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C); see General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 160, 102 S.Ct. 2364, 2372 (1982) ("Even after a certification order is entered, the [court] remains free to modify it in the light of subsequent developments in the litigation."); Owino v. CoreCivic, Inc., 36 F.4th 839, 847 (9th Cir. 2022) (same). A "fail-safe" class is "one that is defined so narrowly as to preclude[] membership unless the liability of the defendant is established." Torres v. Mercer Canyons, Inc., 835 F.3d 1125, 1138 n. 7 (9th Cir. 2016) (internal quotation marks omitted). "Such a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." Olean, 31 F.4th at 669 n. 14 (quoting Messner v. Northshore University HealthSystem, 669 F.3d 802, 825 (7th Cir. 2012)); Messner, 669 F.3d at 825 (explaining that a fail-safe class is "one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim"). However, a fail-safe class "can . . . be solved by refining the class definition rather than by flatly denying class certification on that basis." Olean, 31 F.4th at 669 n. 14 (internal quotation marks omitted); see also 1 Newberg on Class Actions § 3:6 (5th ed.) (2021 Supp.) ("[E]ven those courts that disapprove of fail-safe classes recognize that a court can simply fix the class definition instead of denying class certification.").

Plaintiffs seek to redefine the class as follows:

> Nationwide Injunctive Class: All legally blind individuals who visited a LabCorp patient service center with a LabCorp Express Self-Service kiosk in

---

[5] All "Rule" references are to the Federal Rules of Civil Procedure unless otherwise indicated.

3

>> the United States during the applicable limitations period, but were unable to use the LabCorp Express Self-Service kiosk.
>
> <u>California Class</u>: All legally blind individuals who visited a LabCorp patient service center with a LabCorp Express Self-Service kiosk in California during the applicable limitations period, but were unable to use the LabCorp Express Self-Service kiosk.

(<u>See</u> Dkt. 107-1, Memo at 8). Relying on <u>Mullins v. Direct Digital, LLC</u>, 795 F3d. 654 (7th Cir. 2015), (<u>see</u> Dkt. 107-1, Memo at 7), plaintiffs contend that the redefined class definition is not fail-safe because the requirements for class membership are subject to objective criteria. (<u>Id.</u> at 8). More specifically, they contend that the definition comports with the requirement that "[i]t identif[y] a particular group of individuals [] harmed in a particular way [] during a specific period in particular areas." (<u>Id.</u> at 7) (quoting <u>Mullins</u>, 795 F.3d at 660-61). However, the portion of the <u>Mullins</u> decision relied on by plaintiffs relates to whether the class definition is too vague. <u>See</u> 795 F.3d at 659-61 (noting that "classes that are defined too vaguely fail to satisfy the 'clear definition' component" of ascertainability and finding that the class definition was "not vague" because "[i]t identifie[d] a particular group of individuals [] harmed in a particular way [] during a specific period in particular areas"). It was not, with respect to the quoted test, addressing a fail-safe class.[6] <u>See</u>, <u>generally</u>, <u>id.</u>

With respect to fail-safe classes, the <u>Mullins</u> court explained that "[t]he key to avoiding this problem is to define the class so that membership does not depend on the liability of the defendant." <u>Mullins</u>, 795 F.3d at 660. Here, the proposed class definition is defined "so that membership does not depend on the liability of the defendant." <u>See id.</u> In other words, if LabCorp "prevails, <u>res judicata</u> will bar class members from re-litigating their claims." <u>Id.</u> at 661. Moreover,

---

[6] As such, the court will not address LabCorp's arguments, (<u>see</u> Defendant [LabCorp's] Memorandum in Opposition to Plaintiffs' Motion [] ("Opp. ") 7-8), regarding plaintiffs' reliance on <u>Mullins</u>'s objective criteria test.

4

there is "a reasonably close fit between the class definition and [plaintiffs'] chosen theory of liability." Torres, 835 F.3d at 1138 n. 7.

In its Opposition, LabCorp divides its brief into three separate sections. The first section argues that "the currently certified classes are fail-safe." (Dkt. 110, Opp. at 2); (see id. at 2-5). However, it's unclear why LabCorp is making this argument since plaintiffs' Motion seeks to "remove any doubt" as to whether the current class definition is arguably a fail-safe class within the meaning of Olean. (See Dkt. 107-1, Memo at 7).

The second section of LabCorp's opposition asserts that "the fail-safe classes cannot be 'refined' into classes with fail-safe memberships." (Dkt. 110, Opp. at 5); (see id. at 5-8). LabCorp asserts that, although plaintiffs "have dropped some of the language more closely tied to their theory of ADA violations . . . , and now define class membership as all legally blind persons 'unable to use' the kiosk[,]" (id. at 6), plaintiffs are "still seeking certification of the same fail-safe class of persons who Plaintiffs believe have ADA claims . . . because an independently accessible kiosk was not available to them." (Id. at 6-7). LabCorp asserts, for instance, that "if members of the California class are shown to have no Unruh Act claim, they will fall out of the proposed definition." (Id. at 7). LabCorp's assertions are unpersuasive.

As an initial matter, LabCorp does not explain how or why the refined definition constitutes a fail-safe class or why class members will fall out of the class definition if LabCorp were to prevail on the certified claims.[7] (See, generally, Dkt. 110, Opp. at 6-8). Indeed, LabCorp's Opposition – which makes little, if any, effort to explain how or why the revised class definition is fail-safe – focuses on challenging the revised class definition as overbroad. (See id. at 6-7). For example, LabCorp contends that the class "cannot be certified so broadly as to include persons 'unable to

---

[7] Nor could it because, unlike the prior class definition, which generally tracked the ADA, (see Dkt. 103, Amended Class Cert. Order at 3-4, 24) (certifying classes composed of blind persons who "were denied full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations due to LabCorp's failure to make its e-check-in kiosks accessible to legally blind individuals"); 42 U.S.C. § 12182(a) ("No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation[.]"), the revised class definition markedly does not. (See Dkt. 107-1, Memo at 8).

use' a LabCorp kiosk, including, for example: (i) persons visiting a patient service center . . . without an operational kiosk; or (ii) persons who preferred to (and did) check in at the front desk, as 25% of all Labcorp PSC patients do; or (iii) persons who (like Plaintiff Vargas) were directed to check in at the front desk and never attempted to use a kiosk or may have even known a kiosk existed at a particular PSC." (Id. at 6). In other words, LabCorp contends that the "revised [class] definition[] [is] overbroad" in that it includes class members who were not harmed as a result of LabCorp's conduct. (See id. at 6-7). LabCorp's contentions are unpersuasive.

As an initial matter, LabCorp provides no evidence or citation to the record to support its contentions. (See, generally, Dkt. 110, Opp. at 6). LabCorp's contention that plaintiffs' refined class definition is overbroad because it "include[s] individuals in all of these situations," (id.), is inaccurate because "even a well-defined class may inevitably contain some individuals who have suffered no harm as a result of a defendant's unlawful conduct." Torres, 835 F.3d at 1136. "Ultimately, [LabCorp's] argument reflects a merits dispute about the scope of . . . liability, and is not appropriate for resolution at the class certification stage of this proceeding." Id. at 1137.

In any event, there is no doubt that the conduct at issue here is uniform as the crux of plaintiffs' legal challenge is that LabCorp's kiosks are not ADA compliant and, therefore, are inaccessible to visually impaired users. (See Dkt. 40, FAC at ¶¶ 4-6, 29); (Dkt. 103, Amended Class Cert. Order at 8) (noting that the commonality requirement was met, in part, based on contention that "LabCorp trained its employees that use of the kiosks to check-in was mandatory"); (Dkt. 79, Exh. 12 (Deposition of Joseph Sinning) ("Sinning Depo") at JA61-62) (testimony that use of kiosks was "not optional"); (id. at JA63); (Dkt. 80, Exh. 20 (Deposition of Bartholomew Coan) ("Coan Depo") at JA518-524); (Dkt. 80, Exh. 17 at JA445); see, e.g., Vargas v. Quest Diagnostics Clinical Labs, Inc., CV 19-8108 DMG (MRWx) ("Quest") (Dkt. 228 at 5) ("The 'common policy' here is Quest's widespread rollout of its kiosks, which on their own are inaccessible to visually impaired users."). Thus, the "situations" LabCorp describes "merely highlight[] the possibility that an injurious course of conduct may sometimes fail to cause injury to certain class members."[8] Torres,

---

[8] Indeed, LabCorp's focus on making absolutely sure that only those individuals who were actually harmed can be members of the class seeks to impose an ascertainability requirement that

6

835 F.3d 1136. However, "such fortuitous non-injury to a subset of class members does not necessarily defeat certification of the entire class, particularly as the district court is well situated to winnow out those non-injured members at the damages phase of the litigation, or to refine the class definition." Id. at 1137; see Olean, 31 F.4th at 669 n. 14 ("[T]he court may redefine the overbroad class to include only those members who can rely on the same body of common evidence to establish the common issue.").

In an effort to address the Olean Court's concerns regarding fail-safe classes and because plaintiffs do not object to the court further refining the class definition, (Dkt. 111, Reply at 10 n. 4), the court will define the class as follows:

> Nationwide Injunctive Class:  All legally blind individuals who visited a LabCorp patient service center with a LabCorp Express Self-Service kiosk in the United States during the applicable limitations period, and who, due to their disability, were unable to use the LabCorp Express Self-Service kiosk.
>
> California Class:  All legally blind individuals who visited a LabCorp patient service center with a LabCorp Express Self-Service kiosk in California during the applicable limitations period, and who, due to their disability, were unable to use the LabCorp Express Self-Service kiosk.

The revised definition addresses any concerns regarding an over-inclusive class, while also avoiding a fail-safe definition. See Messner, 669 F.3d at 825 ("Defining a class so as to avoid, on

---

is not allowed under Ninth Circuit law, see Briseno v. ConAgra Foods, Inc., 844 F.3d 1121, 1126, 1133 (9th Cir. 2017) ("[T]he language of Rule 23 neither provides nor implies that demonstrating an administratively feasible way to identify class members is a prerequisite to class certification[.]"), and is inconsistent with important policy objectives of class actions by denying class members with the only meaningful possibility they may have to recover anything at all. See Mullins, 795 F.3d at 667-68 (The problem "with this dilution argument [that a class may include class members with invalid claims] is that class certification provides the only meaningful possibility for bona fide class members to recover anything at all. . . . [¶] By focusing on making absolutely certain that compensation is distributed only to those individuals who were actually harmed, the heightened ascertainability requirement has ignored an equally important policy objective of class actions: deterring and punishing corporate wrongdoing.") (internal quotation marks omitted).

one hand, being over-inclusive and, on the other hand, the fail-safe problem is more of an art than a science."); Torres, 835 F.3d at 1138 n. 7 (Ninth Circuit "require[s] no more than a reasonably close fit between the class definition and the chosen theory of liability."). The revised class definition is similar to the one recently adopted by Judge Gee in the Quest case. See Quest, CV 19-8108 DMG (MRWx) (Dkt. 228 at 6). The difference in definitions stems from the fact that the defendant in Quest introduced a three-finger swipe function at some point in the process. See id.; see also Vargas v. Quest Diagnostics Clinical Labs., 2021 WL 5989958, *1 (C.D. Cal. 2021) ("Beginning in 2020, Quest began to roll out a change to its kiosks that allows visually-impaired patients to swipe the touchscreen using three fingers, which checks the patient in and alerts a phlebotomist that the patient has arrived."). Here, no such action was taken. Also, in this case, there is evidence that LabCorp implemented its kiosks across its national network of more than 1,800 PSCs, and that LabCorp trained its employees that use of the kiosks to check-in was mandatory. (See Dkt. 103, Amended Class Cert. Order at 3, 8); (Dkt. 79, Exh. 12 (Sinning Depo) at JA61-62) (testimony that use of kiosks "not optional"); (id. at JA63); (Dkt. 80, Exh. 20 (Coan Depo) at JA518-524); (Dkt. 80, Exh. 17 at JA445).

      Moreover, the revised class definition does not impact the court's determinations regarding class certification. As the court previously found, common questions of fact and law predominate over individualized questions. (See Dkt. 103, Amended Class Cert. Order at 15-22); (see id. at 8) (common questions of fact and law include, but are not limited to, whether: (1) "LabCorp's kiosks are independently accessible to legally blind individuals"; (2) "LabCorp has implemented the inaccessible check-in kiosks system across its national network of more than 1,800 PSCs"; (3) "LabCorp trained its employees that use of the kiosks to check-in was mandatory"; (4) "use of the kiosk is a good or service LabCorp offers its customers"; (5) "LabCorp offers a qualified aid or auxiliary service to allow legally blind individuals to access the check-in kiosk service"; and (6) "LabCorp has remedied the inaccessible check-in kiosk across its system."). Indeed, during the class certification proceedings, LabCorp did "not dispute that there is at least one common question of law at issue here." (Id. at 8) (quoting LabCorp's portion of Dkt. 66-1, Joint Brief Concerning Plaintiff's Motion for Class Certification at 37).

The third and final section of LabCorp's opposition contends that "no refinement to the Rule 23(b)(3) California sub-class can render it certifiable." (Dkt. 110, Opp. at 8); (see id. at 8-13). Most of this section of LabCorp's brief seeks to reargue the propriety of the court's certification order. (See id. at 8-13). For instance, LabCorp refers to Judge Gee's denial of class certification of the Quest plaintiffs' Rule 23(b)(3) class, and her subsequent denial of plaintiffs' request for reconsideration of that decision. (See id. at 9-11). But as the court previously explained, there are significant and fundamental factual and procedural differences between this case and the Quest case.[9] (See, e.g., Dkt. 103, Amended Class Cert. Order at 20 n. 15) (noting that the Quest court had already resolved a summary judgment motion, and that the kiosks in Quest were not identical to those in this action). Nothing about the Quest Court's denial of the plaintiffs' request for reconsideration changes this court's conclusion that certification under Rule 23(b)(3) was proper in this case.

In any event, LabCorp did not timely file a motion for reconsideration, see Local Rule 7-18 (motion for reconsideration "must be filed no later than 14 days after entry of the Order that is the subject of the motion or application"), or make any effort to satisfy any of the requirements for reconsideration. (See, generally, Dkt. 110, Opp.); see Local Rule 7-18 (grounds for reconsideration are (1) material difference in fact or law; (2) emergence of new material facts or change of law; or (3) manifest showing of a failure to consider material facts).

The only argument LabCorp raises in the final section of its brief that relates to the refined class definition is its contention that, "with fail-safe Rule 23(b)(3) classes now barred in this Circuit, Plaintiffs' new proposed definition of persons who were 'unable to use' a kiosk would obviously include non-injured legally blind persons – such as those who preferred to and did check in at the PSC front desk, or those who visited a PSC without an operational kiosk." (Dkt 110, Opp. 11-12). But this is the same argument LabCorp raised in the previous section of its brief. (See, e.g., id.

---

[9] Given that LabCorp is now contradicting its prior position that this case is "fundamentally different from the Quest [] case[,]" (Dkt. 90, Defendant['s] Opposition to Plaintiffs' Request for Judicial Notice at 4), it appears, as plaintiffs argue, that LabCorp is seeking to "improve its litigation position by attempting to align the facts of this case with the facts in Quest[.]" (Dkt. 111, Reply at 7).

9

at 6) (contending that the refined class definition is overbroad because it includes "persons 'unable to use' a LabCorp kiosk, including, for example: (i) persons visiting a patient service center . . . without an operational kiosk; or (ii) persons who preferred to (and did) check in at the front desk, as 25% of all Labcorp PSC patients do"). For the reasons set forth above, the court rejects this argument. Moreover, the court has already determined that such individualized issues would not predominate, and that a class action is superior to other methods for fairly and efficiently adjudicating the present controversy. (See Dkt. 103, Amended Class Cert. Order at 13-24). In short, the redefined Rule 23(b)(3) class definition does not undermine the court's previous determinations.

Finally, LabCorp, in a one-sentence concluding paragraph, states that "the Olean Court recently recognized the Supreme Court's directive that '[e]very class member must have Article III standing in order to recover individual damages,' and cautioned: 'Rule 23 also requires a district court to determine whether individualized inquiries into this standing issue would predominate over common questions.'" (Dkt. 110, Opp. at 13) (quoting Olean, 31 F.4th at 669 n. 12 (quoting TransUnion LLC v. Ramirez, 141 S.Ct. 2190, 2208 (2021))). However, LabCorp says nothing further on this issue, much less argue why or how the standing requirement defeats predominance. (See, generally, Dkt. 110, Opp. at 13). "It is not enough merely to present an argument in the skimpiest way, and leave the Court to do counsel's work – framing the argument, and putting flesh on its bones through a discussion of the applicable law and facts." Beasley, 2011 WL 1327130, at *2; see also Yamada, 825 F.3d at 543 (an "argument must be raised sufficiently for the trial court to rule on it" to preserve it for appellate review).

In any event, as the court previously noted, (see Dkt. 103, Amended Class Cert. Order at 18), the Ninth Circuit in Olean reiterated its previous holding "that a district court is not precluded from certifying a class even if plaintiffs may have to prove individualized damages at trial, a conclusion implicitly based on the determination that such individualized issues do not predominate over common ones." 31 F.4th at 669. The Olean Court rejected the notion "that Rule 23 does not permit the certification of a class that potentially includes more than a de minimis number of uninjured class members." id.; see also id. at 668-69. Just as the court previously

concluded that predominance is not defeated by individualized questions regarding damages, it also persuaded that predominance is not defeated by individualized inquiries into standing. See Torres, 835 F.3d at 1137 n. 6 (For standing, "it must be possible that class members have suffered injury, not that they did suffer injury, or that they must prove such injury at the certification phase.").

**CONCLUSION**

In short, the Olean Court's statement regarding fail-safe classes does not change the court's findings and conclusions that the Rule 23(a), (b)(2) and (b)(3) factors have been satisfied.[10] Therefore, the court declines to decertify the class, (see Dkt. 110, Opp. at 13) (concluding with request that court decertify the classes), and the court's Amended Order Re: Motion for Class Certification otherwise stands.

Based on the foregoing, IT IS ORDERED THAT:

1. Plaintiffs' Motion to Refine Class Definition **(Document No. 107)** is **granted** as set forth in this Order.

2. Page 24, Lines 13-23 of the Court's Amended Order of June 13, 2022 (Dkt. 103) is replaced with the following:

> Nationwide Injunctive Class:  All legally blind individuals who visited a LabCorp patient service center with a LabCorp Express Self-Service kiosk in the United States during the applicable limitations period, and who, due to their disability, were unable to use the LabCorp Express Self-Service kiosk.
>
> California Class:  All legally blind individuals who visited a LabCorp patient service center with a LabCorp Express Self-Service kiosk in California during the applicable limitations period, and who, due to their disability, were unable to use the LabCorp Express Self-Service kiosk.

---

[10] In other words, in refining the class definition, this Order does not materially alter the composition of the class or materially change in any manner the Amended Order Re: Motion for Class Certification.

3. Counsel for the parties shall forthwith provide a copy of this Order to the Ninth Circuit Court of Appeals.

Dated this 4th day of August, 2022.

                                                      /s/
                                   Fernando M. Olguin
                               United States District Judge